**MORROW RADIO MANUFACTURING CO., a corporation, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16857.**

United States Court of Appeals Ninth Circuit.

Feb. 13, 1961.

Rehearing Denied March 20, 1961.

Allen A. Bowden, Seattle, Wash., Bernard Shevaoh, Portland, Or., Fred S. Gilbert, Jr., Washington, D. C., for appellant.

Howard A. Heffron, Acting Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Norman H. Wolfe, Attys., Dept. of Justice, Washington, D. C., C. E. Luckey, Edward J. Georgeff, Asst. U. S. Atty., Portland, Or., for appellee.

Before STEPHENS, HAMLEY and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

The Morrow Radio Manufacturing Company is an Oregon corporation engaged in the manufacture of radio equipment. During the period from October 1, 1955, through September 30, 1958, it manufactured and sold receivers, fixed-tuned receivers, power supply units, converters, and speakers.[1] Each article is in a separate cabinet and is sold primarily as amateur radio equipment.

Section 4141 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4141, imposes a tax upon certain radio equipment. Morrow's contention is that it does not impose any tax on the equipment which it manufactures. The statute reads as follows:

"There is hereby imposed upon the sale by the manufacturer, producer, or importer of the following articles (including in each case parts or accessories therefor sold on or in connection with the sale thereof), a tax equivalent to 10 percent of the price for which so sold:

"Radio receiving sets.

"Automobile radio receiving sets.

"Television receiving sets.

"Automobile television receiving sets.

"Phonographs.

"Combinations of any of the foregoing.

"Radio and television components.

"Phonograph records.

Except in the case of radio and television components and phonograph

---

1. The receivers are the Falcon (Exhibit 9–A) and the MBR–5 (Exhibit 9–B). Both are designed to receive transmissions on the five amateur bands, and in addition the Falcon is designed to receive transmissions on the standard broadcast band. Neither of these units is designed as a complete radio receiving set, and neither will operate unless connected to a power supply unit, an antenna and a speaker.

The fixed-tuned receiver is the FTR (Exhibit 9–C) and is designed to receive transmissions only on a single wave length. Like the receivers, it will not operate unless connected to a power supply unit, an antenna and a speaker.

The power supply units are the RAP 250–S (Exhibit 9–D) and the RVP (Exhibit 9–E). The RAP 250–S is designed to convert commercial voltages into voltages usable with radio receivers, and it also has a built-in speaker. The RVP converts voltages from automobile batteries into voltages usable with radio receivers. Neither one is a complete radio receiving apparatus.

The converters, namely, the 5BR, 5BR–2, 5BRLN and 5–BRF (the 5–BRF is in evidence as Exhibit 9–F), are designed for use with fixed-tuned receivers but also may be hooked into a standard broadcast receiver to make a combination short-wave and standard broadcast receiving set. It is incapable of producing sound by itself.

The speaker (Exhibit 9–G) is conceded to be a taxable component as it is capable of being used as a part of any radio receiving set.

records, the tax imposed by this section shall apply only to articles of the entertainment type.[2] "

Section 4142 supplements Section 4141 by providing a definition of radio and television components:

"As used in section 4141, the term 'radio and television components' means chassis, cabinets, tubes, speakers, amplifiers, power supply units, antennae of the 'built-in' type, and phonograph mechanisms, which are suitable for use on or in connection with, or as component parts of any of the articles enumerated in section 4141, whether or not primarily adapted for such use.[3] "

Morrow brought suit in the United States District Court for the District of Oregon in an effort to recover $1,658.03 in excise taxes allegedly erroneously paid to the government. The United States denied that the taxes were erroneously paid and in addition counterclaimed for $10,533.60 allegedly due and owing to the government in unpaid taxes. All of the amounts involved were excise taxes assessed under the provisions of § 4141. The district court found in favor of the government on both contentions, and it is from this decision that the appellant brings this appeal.[4]

The district court found that the articles in question were not of the "entertainment type;" that they were components as defined by the statute and therefore taxable; and that the amount of the tax had been collected from the purchasers so that under the provisions of § 6416 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6416, Morrow is not entitled to recover the amounts from the government.[5]

■ In the first brief filed by Morrow in this appeal, it was contended that the units which Morrow manufactures are not sold as radio components, but rather that they are sold as complete radio receiving sets within the meaning of § 4141. If the contention is sound, the articles would not be subject to tax since the statute places a tax only on "components" when the articles manufactured are not of the "entertainment type."[6] The essence of this argument is that though none of the *units* is a complete radio receiving set, they are sold in groups that are complete radio receiving sets. The district judge found that this was not the case, and his conclusion is supported by the evidence. The record shows that the parts were not sold together in groups which formed radio receiving sets since (1) the purchasers from Morrow would order individual

2. The last sentence of this section was enacted by the 84th Congress and became effective on September 1, 1955 (Pub.L. No. 367, 84th Cong., 1st Sess., Aug. 11, 1955). The statute was restored to its original form by the Excise Tax Technical Changes Act of 1958, 72 Stat. 1275. The restoration became effective on January 1, 1959.

3. This section was amended in 1958 to include phonograph record players within the term "radio and television components." The amendment was not effective until subsequent to the period covered by this case and has no bearing on the issues presented here.

4. The opinion of the district judge is printed in Morrow Radio Manufacturing Co. v. United States, D.C.Or.1959, 179 F.Supp. 436.

5. The pertinent provisions of § 6416 relating to the recovery of taxes read as follows:

"No credit or refund of any overpayment of tax imposed by section 4231 (4), (5), or (6) (cabarets, etc.), chapter 31 (retailers taxes), or chapter 32 (manufacturers taxes) shall be allowed or made unless the person who paid the tax establishes, under regulations prescribed by the Secretary or his delegate, that he—

"(A) has not included the tax in the price of the article * * * and has not collected the amount of the tax from the person who purchased such article * * *

"(B) has repaid the amount of the tax * * *."

6. The trial judge ruled that the parts manufactured by Morrow are not of the "entertainment type," and that ruling has not been attacked on this appeal.

units rather than operating sets;[7] (2) that certain of the parts manufactured by Morrow could be used with parts manufactured by other manufacturers in order to form radio receiving sets;[8] and (3) that there are a number of ways in which the parts manufactured by Morrow can be combined in order to form radio receiving sets.[9] Therefore the trial judge was correct in holding that Morrow was a manufacturer of components within the meaning of §§ 4141 and 4142.

■ In the second brief that it filed on this appeal, Morrow abandoned this argument and admitted that the radio parts are "components" as the statute defines them. However, it is now contended that the components are not "taxable components" under the definition set forth in § 4142 of the statute. This section provides that in order to be taxable the components must be "suitable for use on or in connection with, or as component parts of, any of the articles enumerated in section 4141, whether or not primarily adapted for such use."[10] Morrow now argues that the parts manufactured are not suitable for use as component parts of a radio receiving set, for they can not be joined together in a single cabinet in order to form a self-contained radio receiving set. This argument presupposes that the radio receiving sets referred to by the statute must be contained in a single cabinet. We do not feel that an examination of the present statute and its predecessors supports the position that Morrow advances. In so deciding we accept the fact that the parts which Morrow manufactures can not be combined together within a single cabinet, or at least are not suitable to be so combined.[11]

The first statute to impose a tax on radio receiving apparatus was passed in 1932.[12] The text of that statute reads as follows:

"There is hereby imposed upon the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to 5 per centum of the

7. On cross-examination Fred J. Hart, the general manager of Morrow, testified as follows:
"Q. Is it not true, Mr. Hart, that you do sell power supplies and receivers separately on many occasions? That is true from your company's point of view regardless of what the ultimate customer does? A. Yes, we sell them separately.

8. There was testimony which indicates that the speaker and the converter can be used with equipment manufactured by other manufacturers without the necessity of modification and that the other parts manfactured by Morrow could be used with equipment manufactured by other manufacturers after some modifications had been made.

9. The following testimony was given by Byron L. Youtz, one of appellant's experts:
"Q. Based on your examination of Exhibits 9–A through –G and looking at each of them separately, which of those come within your definition of radio receiving sets? A. Taken separately, really none of them do.
"Q. Which of those, if any, in combination would constitute a radio receiving set within your definition? A. Well, there are several possible orientations.

I would say that the radio receivers of Type –A or –B plus one of the power supply units which would be –D or –E, plus a speaker. Now, I might say that there are several permutations among this group. That is, power supply unit Type –D has a speaker attached to it; therefore, I could use –A and –D or –B and –D and have a radio receiving set * * *."
There is one more combination that would be possible, if you want this much detail. Type –F, which I think is the converter unit, plus Type –C, the receiver, plus either of the power supplies, and again if we use power supply –D we do not need an external speaker. If we use power supply –E, we do need an external speaker.

10. The only "article" in § 4141 which is referred to for the purposes of this case is "radio receiving sets."

11. There was testimony at the trial that would indicate that the power supply unit becomes extremely hot when it is operating, and that it is not practical to combine it together with the other components in a single cabinet.

12. Revenue Act of 1932, c. 209, 47 Stat. 169, § 607.

price for which so sold: Chassis, cabinets, tubes, reproducing units, power packs, and phonograph mechanisms, suitable for use in connection with or as part of radio receiving sets or combination radio and phonograph sets (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof), and records for phonographs. A sale of any two or more of the above articles shall, for the purpose of this section, be considered a sale of each separately."

The statute set forth above makes the tax applicable only to components, but neither the statute itself nor any regulations promulgated thereunder says that to be taxable the components must be capable of being used as parts of radio receiving sets contained within a single cabinet. The wording of the statute set out above corresponds very closely to the definition of components that is set out in § 4142 of the present statute.

In 1941 the taxing statute was amended and by expressly including radio receiving sets came closer to the form of the statute that is now under consideration: [13]

"There shall be imposed upon the following articles (including in each case, except in the case of musical instruments, parts or accessories therefor sold on or in connection with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to 10 per centum of the price for which sold:

"(a) Radio receiving sets, automobile radio receiving sets, combina-

tion radio and phonograph sets, and phonographs.

"(b) Chassis, cabinets, tubes, reproducing units, power packs, antennae of the 'built-in' type, and phonograph mechanisms, which are suitable for use on or in connection with, or as component parts of, any of the articles enumerated in subsection (a), whether or not primarily adapted for such use.

"(c) Phonograph records.

"(d) Musical instruments."

The major change that the 1941 act made was the addition of the term "radio receiving sets." Subsection (b), as quoted above, retains the tax on components that was imposed by the 1932 act, and the use of terms similar to those used in the 1932 act would indicate that the Congress intended that this subsection retain the same scope that it enjoyed under the 1932 act. There is no suggestion that the components must be suitable for use on or with or as parts of radio sets contained in a single cabinet.

Section 4142 of the present code defines taxable components in almost exactly the same language that was used in the 1941 act.[14] This would indicate that the Congress again intended to allow the same scope of taxation that had been encouraged by the earlier acts. There is nothing in the statute set forth in the 1954 code to suggest that the Congress intended to redefine taxable components to mean only those components that may be used as parts of radio sets that are contained in a single cabinet. There is nothing to suggest that the 1955 amendment to § 4141 was intended to effectuate such a change.[15]

13. Revenue Act of 1941, c. 412, 55 Stat. 687, § 545.

14. The 1941 act uses the following terms: "Chassis, cabinets, tubes, reproducing units, power packs, antennae of the 'built-in' type, and phonograph mechanisms, which are suitable for use on or in connection with, or as component parts of, any of the articles enumerated in subsection (a), whether or not primarily adapted for such use."

Section 4142 of the present code supplies the following definition of components:

"* * * chassis, cabinets, tubes, speakers, amplifiers, power supply units, antennae of the 'built-in' type, and phonograph mechanisms, which are suitable for use on or in connection with, or as component parts of any of the articles enumerated in section 4141, whether or not primarily adapted for such use.

15. See footnote 2.

This being the reasonable interpretation of the statute, we feel that the judgment of the district court must be affirmed.

In view of this holding it becomes unnecessary to decide whether Morrow is also barred from recovery by § 6416,[16] for we would reach that question only if we determined that the components manufactured by Morrow were not taxable under § 4141. The appellant contends that the district court was in error in holding that the burden of proof was upon Morrow to show that the burden of the tax had not been passed on to the purchaser of the radio equipment. We expressly refrain from passing on this issue.

The judgment of the district court is affirmed.